UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -:

ELVIS MARTIN,                         :      10 Civ. 5411 (LAP)(JCF)
                                      :
              Petitioner,             :         REPORT AND
                                      :      RECOMMENDATION
     - against -                      :
                                      :
WILLIAM LEE,                          :
                                      :
              Respondent.             :
- - - - - - - - - - - - - - - - - - -:

TO THE HONORABLE LORETTA A. PRESKA, U.S.D.J.:

     Elvis Martin brings this petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254. Mr. Martin is challenging his
conviction for murder in the second degree in violation of New York
Penal Law § 125.25(1) following a jury trial in New York Supreme
Court, Bronx County. Mr. Martin contends that: (1) the trial court
improperly admitted statements of non-testifying co-defendants in
violation of his Sixth Amendment right to confrontation under
Crawford v. Washington, 54 U.S. 36 (2004), and (2) the admission of
these statements violated his Sixth Amendment right to
confrontation under Bruton v. United States, 391 U.S. 123 (1968).
For the reasons set forth below, I recommend that the petition be
denied.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/20/17

<u>Background</u>

    A.   <u>The Crime</u>

Miguel Littlejohn was murdered on March 18, 2003.  On that day, Mr. Martin, Royan Jackson, Marvin Forrester, and Oneil Reid approached Nickiesha Harris in 216th Street Park in the Bronx. (Tr. at 124-27).[1]  Ms. Harris is the petitioner's cousin; she was sitting in the park talking with friends when the men approached. (Tr. at 124, 126). The petitioner asked her if she was acquainted with Mr. Littlejohn and if she knew where he lived.  (Tr. at 128). Ms. Harris said she did know him, and she took Mr. Martin, Mr. Jackson, Mr. Forrester, and Mr. Reid to Mr. Littlejohn's apartment building at 720 East 216th Street, across the street from the park. (Tr. at 128-30).  As they were returning to the park, one of Ms. Harris' friends called out to the young men, and they rushed down the block, surrounding Mr. Littlejohn in front of his house.  (Tr. at 129-32).  They then fired a number of shots at Mr. Littlejohn, hitting him multiple times.  (Tr. at 133).

Mr. Littlejohn was taken to the hospital, but died later that night of his wounds.  (Tr. at 257-60, 395-96).  In an interview with detectives the day after the shooting, the victim's brother identified the petitioner as one of the shooters  (Tr. at 572-74,

---

[1] "Tr." refers to the trial transcript.  "Sentencing Tr." refers to the sentencing transcript.

579).  The police also interviewed Ms. Harris on the day of the shooting, and she told them there were three shooters: Mr. Reid, Mr. Forrester, and a third man she did not know.  (Tr. at 165). When she met with the police again on April 12, 2003, she identified the Mr. Martin as one of the shooters.  (Tr. at 167-69). After receiving a tip that Mr. Martin was staying in a nearby hotel, the investigating officers apprehended and arrested him on April 11, 2003.  (Tr. at 453-55).  The officers found him in a hotel room with Ashar Forrester, the brother of Marvin Forrester. (Tr. at 455, 479).  When the officers entered the hotel room, Ashar Forrester was attempting to hide one of the murder weapons.  (Tr. at 479).  Ashar Forrester told the police he thought the weapon had been used by Marvin Forrester in a murder on March 18, 2003.  (Tr. at 479).  Mr. Jackson was arrested on December 1, 2005, and  Mr. Reid was arrested on January 10, 2006.  (Tr. at 626-28, 636).

B. <u>Procedural History</u>

    1. <u>Trial, Verdict and Sentencing</u>[2]

Mr. Martin, Mr. Jackson, and Mr. Reid were charged with murder in the second degree and tried together.[3] At trial, the jury heard the eyewitness testimony of Nickeisha Harris and Tanye Fisher. Ms. Harris testified about the events of March 18, 2003, as described above. She stated that she showed the defendants Mr. Littlejohn's house and watched as they shot and killed him on 216th Street a few minutes later. (Tr. at 128-33). As she was Mr. Martin's cousin and saw him multiple times each week, she had no difficulty identifying him on the day of the shooting or at trial. (Tr. at 126).

---

[2] The respondent has been unable to locate portions of the trial transcript due to a fire at the storage facility where they were kept. See Declaration of Jordan K. Hummel dated December 21, 2016, at ¶ 4 n.1. The testimony of the ballistics experts, Detectives Camacho and Barry, appears in the pages missing from the transcript. Fortunately, in this case the facts relevant to the issues raised are undisputed and are set forth in the parties' briefs submitted both on direct appeal and in this habeas corpus proceeding. Accordingly, I have relied on those narratives in summarizing the facts. See Rules Governing Section 2254 Cases in the United States District Courts, Rule 5 ("If a transcript is cannot be obtained, the respondent may submit a narrative summary of the evidence."); <u>Douglas v. Portuondo</u>, 232 F. Supp. 2d 106, 108 n.1 (S.D.N.Y. 2002); <u>Rodriguez v. Fisher</u>, No. 01 Civ. 3993, 2002 WL 1492118, at *1 n.1 (S.D.N.Y. July 11, 2002).

[3] Mr. Forrester was arrested on September 8, 2003. He pled guilty to manslaughter and was not charged with the other three men. (Tr. at 36).

Ms. Harris' testimony was supported by that of her friend, Ms. Fisher, who provided a similar account of the events leading up to the shooting. She described seeing Ms. Harris talk to four young men, leave the park with two of them, and return a few minutes later. (Tr. at 287-88). After they returned, she testified that she saw the same four men leave the park again a few moments later, pursue Mr. Littlejohn down 216th Street, surround him, and begin firing. (Tr. at 290-93). However, Ms. Fisher did not identify the four men. (Tr. at 287).

Cassandra Reynolds also testified, supplying a potential motive for the crime. She was Mr. Reid's ex-girlfriend, and she said that their relationship had recently fallen apart because she had talked to a man named Miguel, presumably Mr. Littlejohn. (Tr. at 102-04).

In addition to the eyewitness testimony, a New York City Police Department ("NYPD") examiner testified that the lead residue on Mr. Littlejohn's clothing meant that the shots were fired at very close range. (Tr. at 425). The doctor who performed the autopsy concluded that the stippling around the wounds also indicated that the shots were fired within a few feet of Mr. Littlejohn. (Tr. at 591). The testimony of these two experts corroborated the eyewitness accounts of Ms. Harris and Ms. Fisher, who described the shooting as occurring at very close range.

Several other police officers described the events surrounding the investigation and arrest of the co-defendants.  The doctor who performed the autopsy testified that the cause of Mr. Littlejohn's death was gunshot wounds to the head and torso.  (Tr. at 613). Ballistics experts from the NYPD testified that the guns found on the Forrester brothers were used in the shooting.

At issue in this petition is the admission of statements Mr. Jackson and Mr. Reid made to the police.  Detective Michael DePaolis, one of the detectives investigating the case, testified that after being read his Miranda Rights:

> [Mr. Jackson] said that he had been hanging out with Marvin, Elvis and [Mr. Reid] at Evander Childs High School for about a half hour when they decided to walk up Barnes Avenue northbound.  And when they reached 216th Street, East 216th Street, Marvin, Elvis and [Mr. Reid] made a left hand turn going in the direction of White Plains Road, he remained on Barnes Avenue.  Several minutes later he heard some gunshots.

(Tr. at 632).

Mr. DePaolis also testified that Mr. Reid made a written statement after being arrested and read his Miranda rights:

> On March 18th, 2003 at about twelve PM I left school and met my friends, [Mr. Jackson], Marvin, Elvis.  We all went to 216th park, we played around for about twenty minutes.  After about twenty-five minutes we were about to leave the park.

(Tr. at 641).

Mr. Reid also made a video statement on January 10, 2006. The video and transcript were both shown to the jury. The primary difference between the written and video statements is that in the latter Mr. Reid added at the end of the statement "[t]hen all of the sudden I hear someone shout there he goes." (Tr. at 674).[4]

During pre-trial proceedings, petitioner's trial counsel argued that admission of these statements violated the Confrontation Clause and opposed the prosecution's request to consolidate the trials of the three defendants. (Tr. at 27). The trial court nevertheless granted the prosecution's application. (Tr. at 46). Petitioner's counsel objected again when the statements were first discussed during the trial, asking the judge to reconsider the motion to sever and seeking a mistrial. (Tr. at 524-26). The trial court denied that motion, and did not give any limiting instructions regarding the use of these statements against the petitioner. (Tr. at 529).

The jury ultimately convicted Mr. Martin of second-degree murder, and he received a sentence of twenty-five years to life. (Sentencing Tr. at 14-15).

---

[4] This portion of the statement was originally redacted at the request of defense counsel. (Tr. at 536). Due to a technical error at trial, this portion of the statement was played to the jury. (Tr. at 674-75). Defense counsel objected again to its use. Although the record is not clear, it appears that the objection was overruled. (Tr. at 673-76).

2. <u>Direct Appeal</u>

In April 2008, the petitioner appealed to the Appellate Division, First Department, arguing that the refusal to suppress his co-defendants' statements violated the Confrontation Clause. The Appellate Division found the admission of these statements without redaction to be error under <u>Bruton</u>. <u>People v. Martin</u>, 58 A.D.3d 519, 872 N.Y.S.2d 16 (1st Dep't 2009). However, it held that any error was harmless given "the overwhelming evidence of guilt based upon the testimony of [Ms. Harris]." <u>Id.</u> The court also found harmless any putative error under <u>Crawford</u>. <u>Id.</u> The New York State Court of Appeals denied leave to appeal in April 2009. <u>People v. Martin</u>, 12 N.Y.3d 818 (2009).

<u>Discussion</u>

A. <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner for a claim that a state court has adjudicated on the merits only where the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This deference is only required where the state court "adjudicated [the claim] on the merits," 28 U.S.C. § 2254(d); otherwise, the pre-AEDPA, de novo standard of review applies. Noble v. Kelly, 246 F.3d 93, 98 (2d Cir. 2001); see also Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). A finding of harmlessness constitutes a decision on the merits. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003) (per curiam); see also Davis v. Ayala, __ U.S. __, __, 135 S. Ct. 2187, 2198 (2015).

Federal law is "clearly established" when it is expressed in "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." Howes v. Fields, 565 U.S. 499, 505 (2012) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). Habeas relief is not available when a petitioner raises an issue that the Supreme Court has not squarely addressed or clearly answered. Wright v. Van Patten, 552 U.S. 120, 125-26 (2008).

A state court's decision is "contrary" to clearly established federal law when the state court "applies a rule that contradicts the governing law set forth" in a Supreme Court opinion, or when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams, 529 U.S. at 405-06.

An unreasonable application of the law is different from an "incorrect or erroneous decision." Jackson v. Conway, 763 F.3d 115, 134 (2d Cir. 2014) (internal quotation marks omitted). A decision is an unreasonable application of clearly established law when "the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685, 694 (2002). Habeas relief should be granted on this prong only where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

Mr. Martin brings this claim pro se. A pro se habeas petition must be construed liberally to include any colorable legal claim and the strongest arguments it suggests. Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2008); Mears v. Graham, No. 13 Civ. 8737, 2014 WL 4060022, at *1 (S.D.N.Y. Aug. 14, 2014).

B.   Underlying Error

The Confrontation Clause of the Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. In Bruton, the Supreme Court interpreted the Confrontation Clause to preclude the admission of statements by a non-testifying co-defendant tending to incriminate the defendant

when the defendant is unable to cross-examine the co-defendant. 391 U.S. at 124-25. Potential <u>Bruton</u> problems may be addressed by redacting or deleting references to the defendant in the co-defendant's statements. <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987). In <u>Crawford</u>, the Supreme Court held that an out-of-court testimonial statement must be excluded unless the witness is unavailable and the defendant had a prior chance to cross-examine. 541 U.S. at 68.

The Appellate Division found that the admission of Mr. Jackson's and Mr. Reid's statements was error under <u>Bruton</u> and assumed it was error under <u>Crawford</u>. <u>Martin</u>, 58 A.D.3d at 519, 872 N.Y.S.2d at 17. Indeed, the prosecution introduced out-of-court statements, testimonial in nature, with no prior opportunity to cross-examine the declarants (violating <u>Crawford</u>), and the statements were those of a co-defendant that referenced and implicated the petitioner and were not redacted to remove his name (violating <u>Bruton</u>). But the Appellate Division also found that the error was harmless. <u>Id.</u> At this stage, the parties do not dispute that an error occurred, but only the finding of harmlessness.

C.  <u>Harmless Error Review</u>

1.  <u>Standard of Review</u>

A Confrontation Clause violation is subject to harmless error analysis. <u>See, e.g.</u>, <u>Fuller v. Gorczyk</u>, 273 F.3d 212, 220 (2d Cir.

2001); <u>Mingo v. Artuz</u>, 174 F.3d 73, 78 (2d Cir. 1999).  On direct appeal, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967).  The Appellate Division did this, citing to <u>People v. Crimmins</u>, which applied the <u>Chapman</u> standard in New York state court.  36 N.Y.2d 230, 236, 367 N.Y.S.2d 213, 218 (1975).

The standard of review differs on collateral review, where a petitioner must satisfy the test established by <u>Brecht v. Abrahmson</u>, 507 U.S. 619 (1993).  <u>See</u> <u>Davis</u>, __ U.S. at __, 135 S. Ct. at 2199 ("[A] prisoner who seeks federal habeas relief must satisfy <u>Brecht</u>, and if the state court adjudicated his claim on the merits, the <u>Brecht</u> test subsumes the limitation imposed by AEDPA.").  In <u>Brecht</u>, the Supreme Court held that a federal court must determine whether the error "had substantial and injurious effect in determining the jury's verdict."  507 U.S. at 623 (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)). "[C]laimants are entitled relief for trial error only if they can establish that 'actual prejudice' resulted."  <u>Id.</u> at 621.

To determine whether the error had an influence on the jury, the federal court must review thoroughly the record and determine "the probable impact of [the erroneously admitted testimony] on the minds of an average jury."  <u>Harrington v. California</u>, 395 U.S. 250,

254 (1969). In analyzing the probable impact, it is relevant to consider "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of properly admitted evidence." Zapulla v. New York, 391 F.3d 462, 468 (2d Cir. 2004); see also Griggs v. Phillips, 401 F. App'x 590, 593 (2d Cir. 2010); Wray v. Johnson, 202 F.3d 515, 526 (2d Cir. 2000). These factors are all indicative of whether the improperly admitted evidence impacted the jury's decision or if the evidence was simply cumulative and unimportant. Zapulla, 391 F.3d at 468.

When performing this inquiry under the AEDPA, substantial deference to the state court is required. Davis, __ U.S. at __, 135 S. Ct at 2198-99. For a federal court to overturn a state court's harmlessness decision, that decision must have been unreasonable in its application of federal law or its determination of the facts of the case. Id.; see also Fry v. Pliler, 551 U.S. 112, 119 (2007). "[A] state-court decision is not unreasonable if 'fairminded jurists could disagree on [its] correctness.'" Davis, __ U.S. at __, 135 S. Ct. at 2199 (second alteration in original) (internal quotation marks omitted) (quoting Richter, 562 U.S. at 101). To be entitled relief, the petitioner must show that the harmlessness decision was "so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

In sum, the question in this case is whether a fair minded jurist could agree with the Appellate Division's finding that the admission of the co-defendants' unredacted statements was harmless. <u>Davis</u>, __ U.S. at __, 135 S. Ct. at 2999. A court must defer to the Appellate Division's decision if it was reasonable, even if the court may have decided the case differently on <u>de novo</u> review. <u>Id.</u>

    2. <u>Analysis</u>

      i. <u>The Strength of the Prosecution's Case</u>

Of the relevant considerations, "[t]he strength of the prosecution's case is probably the single most critical factor." <u>United States v. Reifler</u>, 446 F.3d 65, 87 (2d Cir. 2006) (alteration in original) (quoting <u>Latine v. Mann</u>, 25 F.3d 1162, 1167-68 (2d Cir. 1994)). This factor favors the respondent.

Aside from the statements of Mr. Reid and Mr. Jackson, the prosecution relied primarily on the eyewitness testimony of Ms. Harris and Ms. Fisher described above. Cross-examination by Mr. Martin's attorney hinged on the fact that Ms. Harris left the petitioner out of her account during her first conversation with the police on March 18, 2003. (Tr. at 146-48). Mr. Martin's attorney also questioned Ms. Harris' status as an undocumented

immigrant, attempting to show that she changed her story because she was threatened with deportation. (Tr. at 153-60). Defense counsel also emphasized that Ms. Harris had a partially obscured view of the shooting, and was some distance away from the events. (Tr. at 198).

Despite these deficiencies, the jury evidently judged her account to be credible. The fact that she was testifying against the interests of her own cousin and seemingly found that fact difficult, getting emotional when asked to identify the petitioner, likely bolstered her credibility in the eyes of the jury. (Tr. at 125). And, as discussed previously, the testimony of Ms. Fisher and the expert witnesses corroborated Ms. Harris' account. Ms. Harris stated that the men surrounded Mr. Littlejohn and shot him at very close range. (Tr. at 133). The doctor who performed the autopsy and the NYPD examiner both confirmed that the shooting occurred at close range. (Tr. at 425, 591). Ms. Harris also described seeing that Mr. Littlejohn was shot in the leg and the hip (Tr. at 133), wounds confirmed by the doctor (Tr. at 593-94). Ms. Harris further stated that the men had surrounded Mr. Littlejohn (Tr. at 133), and the doctor, in turn, described entrance wounds on the back, front, left, and right sides of Mr. Littlejohn's body (Tr. at 598-602).

In addition, as discussed above, the petitioner was arrested

in suspicious circumstances in a hotel room with one of the murder weapons, $1,400 in cash, and no other possessions. (Tr. at 455). The fact that he was in the same room as the murder weapon could lead the jury to believe that the gun was his. Indeed, during summation the prosecutor argued that Mr. Martin colluded with Ashar Forrester to hide the weapon and that Ashar Forrester claimed the weapon was his in order to protect Mr. Martin. (Tr. at 924-925). And, more generally, the jury could have understood these suspicious circumstances to show that Mr. Martin attempted to evade capture and was conscious of his guilt.

This was not a case, as the petitioner argues, that was based entirely on the statements of one witness and bolstered by the improperly admitted testimony. While defense counsel raised question about Ms. Harris' and Ms. Fisher's distance from the shooting and their evolving stories, this is far from a case based primarily on improper evidence. Cf. Wood v. Ercole, 644 F.3d 83, 96-97 (2d Cir. 2011) (finding error not harmless where erroneously admitted evidence "central [] in persuading the jury to convict"); Benn v. Greiner, 402 F.3d 100, 106 (2d Cir. 2005) (finding error harmless even where trial error affected issue that "was certainly important to the prosecution's case"). The Third Circuit recently addressed a similar case. In Johnson v. Lamas, in addition to the improperly admitted statements, the prosecution relied on two

eyewitnesses and corroborating medical testimony. 850 F.3d 119, 121, 134-35 (3d Cir. 2017). The eyewitness testimony was "significantly impeached," id. at 135, and both witnesses only saw the incident for a "mini-second," id. The defense also highlighted the witness' substantial criminal histories and drug addiction problems, calling into question their motives for testifying. Id. But the Johnson court still found that the decision of the state court finding harmless error was not "objectively unreasonable such that no fair-minded jurist could agree with it." Id. Here, in contrast to Johnson, the cross examinations of Ms. Harris and Ms. Fisher were considerably less successful.

The jury did request that the testimony of Mr. Reid and Detective DePaulis, who arrested Mr. Jackson, be read back. (Jury Note No. 1, attached as Exh. 1 to Petition's Reply to Respondent [sic] Opposing Declaration) These sorts of requests may be indicative that the evidence was important to the jury's deliberation. United States v. Swiderski, 548 F.2d 445, 451-52 (2d Cir. 1977). However, the fact that the improper evidence may have been considered by the jury is not dispositive, as the question is what impact the evidence likely had on the decision. Schneble v. Florida, 405 U.S. 427, 432 (1972). Here, the jury requested not only the statements of Mr. Reid and Mr. Jackson, but also the testimony of Ms. Harris, Ms. Fisher, and Ms. Reynolds, as well as

the witness' initial interviews and the 911 call. (Jury Note No. 1). Given that the jury requested that the majority of the trial testimony be read back, it is unclear what, if any, importance any single piece of evidence had in their deliberation. This request also does not show that the jury necessarily adopted Mr. Reid and Mr. Jackson's statement during their review, as the petitioner suggests.

### ii. The Prosecution's Conduct

The prosecution's conduct at trial also demonstrates the relatively minor role the co-defendants' statements played. The opening statement contained only three short paragraphs that referenced the statements, while the discussion of Ms. Harris and the physical evidence took center stage. (Tr. at 21-28). Similarly, the prosecutor touched on these statements in only a few sentences over the course of an approximately thirty page summation. (Tr. at 904). These statements were far from the cornerstone of the prosecution's theory. The lack of emphasis supports a finding of harmlessness. Cf. Wood, 644 F.3d at 97-98 (prosecution spending nearly half its summation discussing improperly admitted evidence demonstrated its substantially injurious character); Satterwhite v. Texas, 486 U.S. 249, 260 (1988) (emphasis prosecution placed on improperly admitted evidence during summation suggested its importance to jury's decision).

### iii. <u>Importance of Statements</u>

It is also questionable how much strength the statements of co-defendants lent to the prosecution's case in the first place. This case included testimony from two eyewitnesses that was backed up by corroborative forensic evidence. Neither Mr. Reid nor Mr. Jackson mentioned Mr. Littlejohn, details of the shooting itself, the events immediately preceding the shooting, or whether the petitioner had a gun. (Tr. at 632, 641). They did not directly link the petitioner to the crime. <u>See People v. A.S. Goldman, Inc.</u>, 9 A.D.3d 283, 284, 779 N.Y.S.2d 489, 491 (1st Dep't 2004) (admission of multiple plea allocutions of co-defendants was harmless error as they did not directly link defendant to crime and formed only small portion of evidence). Given the inculpatory evidence discussed above, the admission of these statements did not substantially affect the jury's verdict.

In addition, Mr. Reid's and Mr. Jackson's statements corroborate some aspects of Ms. Harris' account, but differ in other ways. Neither Mr. Jackson nor Mr. Reid mentions a conversation with Ms. Harris. (Tr. at 632, 641). The statements also are not entirely consistent with each other. Mr. Jackson does not mention an observer saying "there he goes," while Mr. Reid does. (Tr. at 632, 674). Mr. Jackson also notes that he separated from the other three who continued down 216th Street, while Mr.

Reid never mentions this occurrence. (Tr. at 632, 641).

In his summation, petitioner's trial counsel emphasized the inconsistencies in the witness accounts. He drew the jury's attention to the fact that Ms. Harris originally stated that there were only three shooters and later told the police there were four. (Tr. at 829). He also pointed out that Ms. Fisher initially reported that only two young men were involved in the shooting. (Tr. at 829). Mr. Reid's and Mr. Jackson's contradictory statements provided two more inconsistent accounts about which of the men were moving down 216th Street in the moments leading up to the shooting. While the defense's summation admitted Mr. Martin was in 216th Street Park, his argument was that the conflicting eyewitness accounts cast doubt on who was involved in the actual shooting. (Tr. at 821-22, 824). The admission of the offending statements provided no further clarity on this critical issue.

### iv. Cumulative Evidence

Mr. Reid's and Mr. Jackson's statements primarily agree on the fact that the petitioner and his co-defendants were at the park around the time of the shooting. But that was already well established by Ms. Harris' and Ms. Fisher's testimony. And despite claiming early in the proceedings that Mr. Martin was never at 216th Street Park, in summation Mr. Martin's counsel argued that he was actually in the park, albeit "at the wrong time with the wrong

20

people." (Tr. at 31-32, 842). Mr. Jackson and Mr. Reid only provided cumulative evidence confirming that the four young men were at 216th Street Park. A Confrontation Clause error is harmless if "the improperly admitted testimony was cumulative of other admissible evidence." Bowen v. Phillips, 572 F.Supp.2d 412, 419 (S.D.N.Y. 2008), see also Harrington, 395 U.S. at 253-54.

Conclusion

In light of these facts, the decision of the Appellate Division was not an unreasonable application of either Supreme Court precedent or the facts at hand. At most this is a question on which "fairminded jurists could disagree," and therefore the decision of the Appellate Division cannot be overturned. Richter, 562 U.S. at 101.

For the reasons set forth above, I recommend that Mr. Martin's petition for a writ of habeas corpus be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Loretta A. Preska, Room 2220, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       June 20, 2017

Copies transmitted this date:

Elvis Martin
06-A-6208
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582
(via U.S. mail)

Jordan K. Hummel, Esq.
Assistant District Attorney
198 E. 161st St.
Bronx, NY 10451
(via ECF)