UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



ELVIS MARTIN,

                Petitioner,

-against-

WILLIAM LEE,

                Respondent.

10 Civ. 5411 (LAP)

MEMORANDUM & ORDER ADOPTING
REPORT & RECOMMENDATION

LORETTA A. PRESKA, Senior United States District Judge:

    Petitioner Elvis Martin ("Petitioner" or "Martin"), proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Petition ("Pet."), ECF No. 1.) On November 1, 2006, a New York State Supreme Court jury convicted Martin of murder in the second degree. (Id. at 1-2.) The court sentenced Martin to twenty-five years to life in prison. (Id.) After filing a direct appeal, Martin sought a writ of habeas corpus on July 15, 2010. (See id.) On January 5, 2017, Respondent filed an Opposition. (Respondent Opposition ("Resp't Opp'n"), ECF No. 17.) On February 3, 2017, the Court referred this matter to United States Magistrate Judge James C. Francis. (Order of Reference, ECF No. 21.) On May 16, 2017, Petitioner filed a timely Reply. (Reply, ECF No. 27.) On June 2, 2017, Respondent filed a Supplemental Opposition. (Respondent Supplemental Opposition ("Resp't Suppl. Opp'n"), ECF No. 28.)

1

On June 20, 2017, Judge Francis issued a Report and Recommendation ("Report") recommending that this Court deny Martin's Petition. (See Report and Recommendation ("R. & R."), ECF No. 29.) On September 11, 2017, Martin filed a timely Objection to the Report. (Objection ("Obj."), ECF No. 35.) For the following reasons the Court adopts the Report in full.

I. **BACKGROUND**

Martin's conviction arose out of the murder of Miguel Littlejohn by a group of gunmen outside of Littlejohn's Bronx apartment on March 18, 2003. (R. & R. at 2-3.) The Court assumes familiarity with the remaining facts and relevant procedural history of the case as set forth in the Report. (Id. at 2-8.)[1] Martin's habeas petition articulates two claims: (1) the trial court improperly admitted statements of non-testifying

---

[1] The Report's statement of facts (R. & R. at 2-3) includes three misstatements. First, contrary to the Report's description, Littlejohn's apartment building was not "across the street from the park," (R. & R. at 2), but left of the park on the same block. (Tr. at 128-29.) Second, the Report inaccurately states that the men were returning to the park at the time they pursued Littlejohn. (R. & R. at 2.) In fact, in Harris' testimony, which the Report cites, she stated that the men were leaving the park at that time. (Id.; Tr. at 130-32.) Third, Harris testified that she identified Martin during her discussion with the police on March 28, 2003, and not on April 12, 2003, as the Report states. (R. & R. at 3; Tr. at 168-9.) Rather, Harris testified to identifying Jackson as the fourth shooter on April 12, 2003. (Tr. 170-172.) As discussed infra, section III, the Report did not rely upon these misstated directional nuances in its analysis and finding of harmlessness. Accordingly, the Court recognizes these errors solely to ensure the accuracy of the record and does not accord them any additional significance.

2

co-defendants ("statements") in violation of his Sixth Amendment right to confrontation under Crawford v. Washington, 54 U.S. 36 (2004); and (2) the admission of these statements violated his Sixth Amendment right to confrontation under Bruton v. United States, 391 U.S. 123 (1968). (Pet. at 2-3.)

At issue is the admission of statements at trial that co-defendants Jackson and Reid made to the police. (R. & R. at 6; see Tr. at 632, 641.) At this stage of the proceedings, the parties do not dispute that an error occurred but only the Appellate Division's finding of harmlessness. (R. & R. at 11.) After a de novo review of the claims on the merits, Judge Francis likewise found the error harmless and denied all of the claims in Martin's habeas petition. (Id. at 34.)

## II. STANDARD OF REVIEW

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). When timely objections have been made to the report, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). However, when a petitioner objects by simply reiterating previous arguments or making only conclusory statements, the court should review such

3

objections for clear error. See Genao v. United States, No. 08 CIV. 9313, 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011); see also Edwards v. Fischer, 414 F.Supp.2d 342, 346-47 (S.D.N.Y. Feb. 7, 2006) ("where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, reviewing courts should review a report and recommendation for clear error."). Further, because "new claims may not be raised properly at this late juncture," such claims "presented in the form of, or along with, 'objections,' should be dismissed." Pierce v. Mance, No. 08 Civ. 4736, 2009 WL 1754904, at *1 (S.D.N.Y. June 22, 2009).

Pro se objections to a report are "generally accorded leniency," and a court should construe them to "raise the strongest arguments that they suggest." Milano v. Astrue, No. 05 Civ. 6527 (KMW)(DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (citations and internal quotation marks omitted), aff'd, 382 Fed.Appx. 4 (2d Cir. 2010). Nonetheless, "even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings . . . such that no party be allowed a 'second bite at the apple' by simply relitigating a prior argument." Pinkney v. Progressive Home Health Servis., No. 06 Civ. 5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (citing Camardo v. Gen Motors Hourly-

4

Rate Employees Pension Plan, 806 F.Supp. 380, 381-82 (W.D.N.Y. 1992)).

**III. DISCUSSION**

In the instant case, Martin objects generally to the Report's conclusions and application of the four-factor Zappulla standard. (Obj. at 8-11; R. & R. at 12.) This Court may only reverse the state appellate court's harmless error determination on the ground that it was objectively unreasonable. Zappulla v. New York, 391 F.3d 462, 467 (2d Cir. 2004). By "distilling . . . Supreme Court precedents," the Court of Appeals in Zappulla found the following factors to be relevant in determining whether the erroneous admission of a statement was harmless error: (1) the overall strength of the prosecution's case; (2) the prosecution's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of other properly admitted evidence. Id. at 468. The strength of the prosecution's case is "the most important factor in our inquiry." Perkins v. Herbert, 596 F.3d 161, 179 (2d Cir. 2010).

Martin's Objections only merit review for clear error because they merely restate claims raised in earlier petitions, are conclusory, or are new claims that may not be raised at this

5

point. The Court has reviewed the Report's findings concerning all of Martin's claims and adopts the Report in its entirety.

**1. The Strength of the Prosecution's Case**

Construed liberally, Martin objects to the Report's findings that the strength of the prosecution's case favors Respondent on two grounds: (i) the jury's review of the statements during deliberations reveals the role of the statements to the strength of the prosecution's case; and (ii) the suspicious circumstances cited by the Report do not support the strength of the prosecution's case. (Obj. at 8-9.)

**(i) Jury Deliberations**

First, Martin argues that the jurors "believe[d]" the statements to be among the "pillars" of the prosecution's case and accordingly relied on them in their decision. (Id.) Martin defends this position by noting: (1) the two statements were among the many trial materials that the jurors requested to have read back during deliberations; and (2) the jury subsequently found Jackson not guilty, a verdict in line with Jackson's improperly admitted statement and in contrast with Harris's testimony that four shooters were involved. (Id.)

This is precisely the same argument Martin raised in his Reply, (Reply at 7), which the Report addressed in full. Judge Francis did not find the argument persuasive, and neither does

6

the Court. At trial, the eyewitness testimonies of Harris and Fisher were the corner piece of the prosecution's case, which strong expert testimony and forensic evidence corroborated. (R. & R. at 14-16.) Despite the defense's attempt during cross-examination to unmoor Harris's credibility by raising her immigration status, visibility of the events, and evolving story, a reasonable jury could have found her account to be credible. (Id. at 15.) Harris testified against her own cousin, was visibly emotional throughout her testimony, and explained her evolving stories as an attempt to protect her cousin, all facts that could have bolstered her credibility before the jury. (Id.) Moreover, the numerous experts corroborating Harris' account and the suspicious circumstances of Martin's arrest in the same room as the murder weapon was relevant evidence to support the jury's determination. (Id.)

Additionally, the Report and, indeed, Martin's Objection, aptly notes that the jury requested most of the trial testimony to be read back during deliberations. (R. & R. at 18; Obj. at 8-9.) The simple fact that these statements were among those requested during deliberations fails to demonstrate that these statements held greater weight than any other piece of evidence in assisting the jury in reaching its decision. See Schneble v. Florida, 405 U.S. 427, 432 (1972). The conclusory allegation

7

that this request alone defined the jury's deliberation is meritless.

As the Report correctly sets forth, to be entitled relief, Petitioner must show that the harmlessness decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Report thoroughly explains how a jury could have reasonably concluded Martin's guilt based on the eyewitness testimonies of Harris and Fisher, corroborated by strong expert testimony and forensic evidence. (R. & R. at 14-16.)

As such, "this was not a case based entirely on the statements of one witness and bolstered by the improperly admitted testimony." (Id.) Indeed, Martin's Objection even states, "the outcome of the case *might* have been different" if the statements had not been introduced to the jurors. (Obj. at 9 (emphasis in original).) This admission by Martin himself aligns with the Report's conclusion that the decision of the state court finding harmless error was not "objectively unreasonable such that no fair-minded jurist could agree with it." (R. & R. at 17.) A rational trier of fact could have determined the witness was credible. Accordingly, Judge Francis properly concluded that "a fair minded jurist could agree with the Appellate Division's finding that the admission of the co-

8

defendant's statements was harmless" and therefore the decision "cannot be overturned." (R. & R. at 14, 21.)

### (ii) Circumstances of Arrest

Second, Martin objects to the Report's characterization of the circumstances of his arrest and the additional influence such circumstances could have had on the jury and the strength of the prosecution's case. (R. & R. at 15-16; Obj. at 9.) The objection appears to be that the Report did not consider Ashar Forrester's ("Ashar") statement to the police during the arrest and that the Report improperly mentions the fact that Martin possessed $1,400 in cash at that time of his arrest. (Obj. at 9.)

Ashar told the police that he was trying to get rid of the gun to protect his brother, Marvin, who he believed had used the gun in connection with Miguel's shooting. (Id.; Tr. at 479.) This, Martin argues, "discredited the prosecution['s] theory that Ashar colluded with a friend against his brother." (Obj. at 9.) This objection, however, is irrelevant to the Report's analysis here. (R. & R. at 16.) The Report only cites these circumstances to note "the fact that [Martin] was in the same room as the murder weapon could lead the jury to believe that the gun was his." This fact, not who the weapon belonged to, is the relevant issue here and reasonably could have contributed to the jury's finding of guilt.

9

Additionally, contrary to Martin's objection, (Obj. at 9), the Report does not improperly note that Martin possessed $1,400 at the time of his arrest. (R. & R. at 16.) Although Defendant objected to receiving the $1,400 into evidence at the onset of the case, Detective Engel revealed the fact while on the stand. (See Tr. at 533.) Although Defendant objected to Detective Engel's testimony, ultimately the objection was stricken from the record. (Tr. at 534.)

**2. The Prosecution's Conduct**

Next, Martin objects to the Report's finding that the prosecution's references to the statements in opening and closing were harmless error. (Obj. at 9.) Martin argues, without more, that the fact that the prosecution mentioned the statements in three paragraphs of the opening statements was "not relatively minor" and that the prosecutor "knew exactly what he was doing in regards to the statements." (Id.) Further, Martin states that during the prosecutor's summation he "made sure" to "reaffirm [to] the jurors" that they should take the statements into account during their deliberations. (Id.)

Yet, as the Report notes, these were three short paragraphs in the prosecution's opening statement, which centered on the testimony of Harris as well as the physical evidence. (See Tr. at 20-28.) Similarly, the Report aptly found that the

prosecutor mentioned these statements in only "a few sentences" of the nearly thirty-page summation. (R. & R. at 18); Cf. Wood v. Ercole, 644 F.3d 83, 97-98 (2d Cir. 2011) (finding error not harmless where the prosecution spent nearly half of its summation discussing the improperly admitted evidence).

Additionally, Martin makes a similarly conclusory allegation that the prosecutor "wanted" the redacted part of the video testimony to be played in front of the jury, "making sure" a technical error would occur. (Obj. at 9.) Not only is this argument without basis in Martin's Objection, but the testimony Martin cites does not support the claims of misconduct Martin alleges. (Id.) Rather, the video technician testified only that it was his first time simultaneously using headphones and video in presenting evidence. (Tr. at 676-77.) Because Martin has not established that there was any misconduct as it relates to this issue, there is no misconduct for the Court to consider here.

### 3. Importance of Statements

Martin rehashes the same allegations regarding the credibility of Harris' testimony and the conflicting co-defendant statements. (Obj. at 10.) As discussed above and in depth in Judge Francis' Report, it is questionable how much strength the statements gave to the prosecution's case given the

strong additional evidence against Martin. (R. & R. at 14-19.) Moreover, the inconsistencies between the eyewitness testimony and the statements were a cornerstone of the defendant's argument that the conflicting accounts cast doubt on Martin's involvement. (Id.) Considering the strength of the prosecution's case even absent these inconsistencies and Martin's own reliance on these inconsistencies, Martin cannot establish that the admission of these statements substantially impacted the jury's verdict. (Id.)

### 4. Cumulative Evidence

Finally, Martin objects to the Report's findings that the statements provided only cumulative evidence concerning Martin's location. Martin rehashes the same argument made earlier in his Reply, (Reply at 1), and indeed his Objection, that the inconsistencies in co-defendants' statements separating themselves from Martin rebut the cumulative nature of the evidence. (Obj. at 11.) However, as repeatedly noted above, the Report addressed in detail the probable impact these inaccuracies may have had on the jury and properly concluded that reasonable jurors could disagree. Moreover, the Report highlights that the statements did not directly link Martin to the crime but merely placed him at the park. (R. & R. at 20.) Given the breadth of evidence placing Martin at the park, which the defense itself conceded in its summation, these statements

12

provided only cumulative evidence confirming this fact and the appropriate finding of harmless error. (Id. at 21); see Bowen v. Phillips, 572 F.Supp.2d 412, 419 (S.D.N.Y. 2008) (Confrontation Clause error is harmless if "the improperly admitted testimony was cumulative of other admissible evidence").

**IV. CONCLUSION**

Accordingly, for the foregoing reasons, the Court adopts the Report and Recommendation (ECF No. 29) in its entirety. The Court denies Martin's habeas corpus petition and directs the Clerk of the Court to close the case and to terminate the Motion at ECF No. 36. The Court declines to issue certificate of appealability on the basis that Martin has not made a substantial showing of a denial of a constitutional right. See 28 U.S.C. § 22 53 (c); Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).

SO ORDERED.

Dated: New York, New York
July 26, 2018

*Loretta A. Preska*
LORETTA A. PRESKA
Senior United States District Judge